**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **EXELTIS USA DERMATOLOGY, INC.,** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 15-7446 (ES)** |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| **ACELLA PHARMACEUTICALS, LLC,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

SALAS, DISTRICT JUDGE

### I.      Background

Plaintiff Exeltis USA Dermatology, Inc. ("Exeltis" or "Plaintiff") brought this action against Defendant Acella Pharmaceuticals, LLC ("Acella" or "Defendant") concerning two of Exeltis's products: Hydro 35® Hydrating Topical Foam ("Hydro 35®") and Salvax® Hydrating Topical Foam ("Salvax®").  (*See* D.E. No. 1).  Its particular claims against Acella are discussed below.  Pending before the Court is a motion by Acella to dismiss Exeltis's Complaint under Federal Rule of Civil Procedure 12(b)(6).  (D.E. No. 12).

"Exeltis is a pharmaceutical company that has been marketing and selling and continues to market and sell various prescription-only dermatological products and other medicines throughout the United States," whereas "Acella's business model includes formulating alternatives or substitutes for existing branded prescription-only products and offering them for

sale at lower prices." (D.E. No. 1 ¶¶ 12, 21).[1]  Exeltis alleges that Acella improperly acquired, disclosed, and used "Exeltis's valuable proprietary information in connection with the formulation and manufacture of Exeltis's Hydro 35® and Salvax® products." (*Id.* ¶ 1).

The predecessors-in-interest of both parties had entered into an "Authorized Generic Promotion Agreement" (the "Agreement") that had, among other things, a confidentiality clause concerning "confidential information disclosed by [Exeltis's predecessor-in-interest] to Acella for the limited purpose of carrying out Acella's responsibilities under the Agreement." (*See id.* ¶¶ 11, 16, 20-24).  Under the Agreement, Acella had "the exclusive rights to promote, distribute and sell a generic version of Salvax®." (*Id.* ¶ 20).  The Agreement was later amended to add the "Hydro 35® prescription-only product to the list of products and again . . . to add a second Salvax® [product] to be rebranded and sold under the Acella name." (*Id.* ¶ 22).

Exeltis alleges that "Acella visited or contacted Pharmasol"—which is the manufacturer that Exeltis's predecessor-in-interest contracted with "to manufacture Hydro 35®." (*Id.* ¶¶ 25, 27).[2]  Acella did so "purportedly to obtain quality control information concerning manufacture of Hydro 35®," but "during those contacts with Pharmasol, Acella induced Pharmasol to disclose to it certain Proprietary Information concerning Hydro 35®, which Acella then used for an improper purpose." (*Id.* ¶¶ 27-28).  This "conduct by Acella is unrelated to the purpose of the Agreement and Acella's obligations thereunder." (*Id.* ¶ 29).  And Exeltis alleges that, within "a matter of months after it obtained . . . [the] Proprietary Information concerning Hydro 35®, . . .

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

[2] Exeltis alleges that, for "Pharmasol to manufacture the Hydro 35® product, [Exeltis's predecessor-in-interest] disclosed to it certain confidential and proprietary information concerning the Hydro 35® product that [Exeltis's predecessor-in-interest], and now Exeltis, considered and continues to consider as its trade secrets, *i.e.*, the Proprietary Information." (D.E. No. 1 ¶ 26).

Acella failed to make a required payment, and, as a result, [Exeltis's predecessor-in-interest] notified Acella of its intent to terminate the license agreement." (*Id.* ¶ 30).

So, Exeltis alleges that "Acella improperly used the Proprietary Information to allow it to manufacture, or have manufactured for it, and sell a flagrant and unauthorized copycat version of Hydro 35®." (*Id.* ¶ 31). Similarly, it alleges that "Acella's possession and use of the Proprietary Information also allowed it to manufacture, or have manufactured for it, and offer for sale and sell a flagrant and unauthorized copycat version of Salvax®." (*Id.* ¶ 36).

Exeltis asserts the following five causes of actions against Acella: (1) "Unfair Competition in Violation of 15 U.S.C. § 1125(a)," (*id.* ¶¶ 41-46); (2) "Unfair Competition Under N.J.S.A. 56:4-1 *et seq.*," (*id.* ¶¶ 47-51); (3) "Common-Law Unfair Competition," (*id.* ¶¶ 52-56); (4) "Deceptive Acts and Practices in Violation of the Common Law of the State of New Jersey," (*id.* ¶¶ 57-61); and (5) "Misappropriation Under The New Jersey Trade Secret Act, N.J.S.A. 56:15-1, *et seq.*," (*id.* ¶¶ 62-71).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Acella moves to dismiss all five claims. (D.E. No. 12). The Court has considered the submissions made in support of and in opposition to Acella's motion and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court GRANTS Acella's motion to dismiss.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (internal quotation marks, textual modifications and citations omitted)).

- 4 -

### III.    Discussion

Acella argues that all of Exeltis's claims are "premised upon the allegation that Acella improperly acquired and used something belonging to Plaintiff that was both confidential and proprietary"—which Exeltis calls "Proprietary Information."  (D.E. No. 12-1 ("Def. Mov. Br.") at 6).   But Acella contends that Exeltis's Complaint "never suggests or identifies even the general nature of such information and certainly never identifies the specific nature of such information."  (*Id.*).  Acella avers that Exeltis's Complaint must set forth "what the information is that is allegedly confidential and proprietary and that it allegedly misappropriated."  (*Id.*).  So, "the principal basis of [Acella's] motion [is] that Plaintiff has not even generically identified any information or category of information that may be even remotely subject to trade secret protection."  (*Id.* at 17 n.3; *see also* D.E. No. 24 ("Def. Reply Br.") at 1-2 ("The issue in this case . . . is not the lack of any heightened pleading standard; instead, it is the complete lack of any even generalized identification of the alleged trade secrets as required by the Federal Rules and case law.")).

In opposition, Exeltis disputes that its Complaint "lacks a specific description of the Proprietary Information at issue or the circumstances in which Exeltis/[Exeltis's predecessor-in-interest] disclosed the Proprietary Information to Acella" and disputes that "such specificity [is] required in this context."  (D.E. No. 19 ("Pl. Opp. Br.") at 8).  Exeltis cites several cases, arguing that courts in the Third Circuit "have not required a party alleging misappropriation to describe trade secrets with particularity in order to survive a motion to dismiss."  (*Id.* at 8-9).  It argues that "the Complaint clearly alleges that Defendant knowingly extracted or obtained the Proprietary Information from Pharmasol outside the boundaries of the audit process."  (*Id.* at 10

(citing D.E. No. 1 ¶¶ 26-29)).[3]  Exeltis also proposes that, "[t]o the extent, the Court finds that the allegations in the current Complaint are lacking under the appropriate pleading standards, Exeltis respectfully requests the opportunity to file the proposed Amended Complaint."  (*Id.* at 13).

Notably, in its opposition, Exeltis contends that the "Proprietary Information includes, but is not limited to, the nature, sequencing, timing and control variables of the manufacturing process by which the Hydro 35® product is manufactured."  (*Id.* at 4).[4]  Tellingly, however, Exeltis fails to cite any paragraphs from its Complaint for this contention.  And "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Further, in its proposed amended Complaint, Exeltis alleges that: "The Proprietary Information includes, but is not limited to, the nature, sequencing, timing and control variables of the manufacturing process by which the Hydro 35® product is manufactured. The Salvax® product is manufactured using the Proprietary Information as well. Neither Exeltis nor [Exeltis's predecessor-in-interest] has disclosed this information to the public."  (D.E. No. 19-1, Ex. A ¶ 27).  And Acella convincingly distinguishes Exeltis's cited case law[5] by rightfully contending that, in those cases, there was at least some identification of the nature of alleged trade secrets. *See, e.g.*, *IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *2, 6

---

[3] The Court notes that, although Exeltis cites to paragraphs 26-29 of its Complaint, there appears to be no reference in those paragraphs (or any others in the Complaint) about "an audit process."

[4] Exeltis also states in its opposition—without citation to any paragraphs from its Complaint—that "[t]he Salvax® product is manufactured using the Proprietary Information as well."  (Pl. Opp. Br. at 4).

[5] (*See* Pl. Opp. Br. at 8-9; Def. Reply Br. at 2 n.1).

(D.N.J. Sept. 13, 2012); *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, No. 09-3125, 2011 WL 773034, at *4 (D.N.J. Feb. 28, 2011).

Accordingly, the Court dismisses Exeltis's Complaint *without prejudice*. To be sure, however, the Court also addresses each of Exeltis's claims separately because Acella advanced additional arguments in support of dismissal for almost all of these claims.[6]

### A. Counts One & Three: "Unfair Competition in Violation of 15 U.S.C. § 1125(a)" & "Common-Law Unfair Competition," respectively

Acella argues that Exeltis's Lanham Act claim under 15 U.S.C. § 1125(a) (Count One) and common-law unfair competition claim (Count Three) both fail because they "are premised upon a party providing a product in a manner that confuses customers as to the source of the product or as to affiliation amongst sources"—but the Complaint has no allegations "that Acella acted in a manner to <u>confuse</u> consumers or made false statements about its own goods or any person's goods." (Def. Mov. Br. at 17-19).

The Court agrees with Acella, (*see* Def. Reply Br. at 12), that Exeltis failed to address this argument for dismissal in its opposition. Indeed, Exeltis seems to advance no argument how either the operative Complaint or its proposed amended Complaint has allegations supporting that Acella acted in a manner to confuse consumers or made misrepresentations about its own goods or any person's goods. *See* 15 U.S.C. § 1125(a); *see also Spark Innovators Corp. v. Tele Marketers, Inc.*, No. 14-1771, 2014 WL 2773661, at *3 (D.N.J. June 19, 2014) ("The test for unfair competition under New Jersey common law 'is identical to the test for federal unfair

---

[6] Acella also contends that Exeltis's "patents and patent applications publicly disclose detailed methods to manufacture" products such as those in this action. (*See* Def. Reply Br. at 6-9). It argues that one of Exeltis's patents, for example, "expressly describes the 'the nature, sequencing, timing and control variables of the manufacturing process' for such products, which is the 'amended' trade secret asserted by Plaintiff," and "public information cannot be protected by trade secrets." (*Id.* at 7). The Court declines to address this argument because, as Acella itself notes, this description of Exeltis's "Proprietary Information" appears to be a contemplated amendment that is not in the operative Complaint.

competition and infringement; whether a likelihood of confusion exists.'" (quoting *Apollo Distributing Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988))).  Accordingly, these two Counts are dismissed *without prejudice* for this additional reason.[7]

### B.  Count Two: "Unfair Competition Under N.J.S.A. 56:4-1 *et seq.*"

 Acella argues that Exeltis's unfair competition claim under N.J.S.A. § 56:4-1 *et seq.* (Count Two) "cannot be maintained."  (Def. Mov. Br. at 20).  It contends that the "sole conclusory allegation . . . concerning this claim is that Acella's alleged conduct appropriated the 'name, reputation, and goodwill' of Exeltis."  (*Id.* (quoting D.E. No. 1 ¶ 48)).  Acella argues that "no allegation was made (or could be made) that Acella in any way used any name or trademark of Exeltis or in any other way improperly impinged upon its goodwill," nor is there any "allegation that Acella's product relied upon the reputation or goodwill of Exeltis."  (*Id.*).

Like Exeltis's apparent failure to address Acella's particular argument for dismissal of Exeltis's Lanham Act claim under 15 U.S.C. § 1125(a) (Count One) and common-law unfair competition claim (Count Three), Exeltis does not seem to advance any specific argument to save its unfair competition claim raised pursuant to N.J.S.A. 56:4-1 *et seq.*  Rather, as noted, Exeltis's opposition appears to center on the adequacy of pleading its alleged "Proprietary Information"—or that it can amend its Complaint concerning such allegations.  (*See* Pl. Opp. Br. at 8-10, 13).

---

[7] The Court is mindful of the tenet that, "[w]here an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."  *Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009)).  Here, however, it seems that Exeltis focused its opposition on the thrust of Acella's motion to dismiss—i.e., the failure to identify the nature of the alleged "Proprietary Information."  Further, Exeltis appears to construe Acella's motion—albeit unconvincingly—as one for a more definite statement under Federal Rule of Civil Procedure 12(e).  (*See* Pl. Opp. Br. at 11-12 ("Although not styled as such, Acella's motion is really a motion for a more definite statement.")).  Accordingly, out of an abundance of caution, the Court will dismiss Exeltis's Complaint *without prejudice*.

N.J.S.A. 56:4-1 provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."  New Jersey's "unfair competition provision is equivalent to the federal unfair competition provision contained in Section 43(a) of the Lanham Act . . . ."  *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 411 (D.N.J. 2010); *see also Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. 11-4380, 2012 WL 3599368, at *7 (D.N.J. Aug. 17, 2012) ("The elements of unfair competition under N.J.S.A. § 56:4 and New Jersey common law are the same as those required under the Lanham Act.").

As Acella aptly notes, (*see* Def. Mov. Br. at 20), the only allegation in Exeltis's Complaint concerning this claim seems to be the following: "Defendant's unauthorized acquisition, disclosure and use of the Proprietary Information in connection with the sale and advertising of its products, services and commercial activities constitutes acts of unfair competition through Defendant's appropriation for its own use of the name, reputation, and goodwill of Exeltis in violation of N.J.S.A. 56:4-1 *et seq*."  (D.E. No. 1 ¶ 48).  It is unclear to this Court how Exeltis's allegations meet the elements of a claim under N.J.S.A. 56:4-1—particularly because Exeltis fails to set forth how a plausible claim for relief under the Lanham Act exists in view of its allegations.  *Cf. CSC Holdings*, 731 F. Supp. 2d at 411 ("[A] finding of liability under Section 43(a) of the Lanham Act leads to a finding of liability under the New Jersey unfair competition law.").  Accordingly, the Court dismisses Count Two *without prejudice*.

### C.  Count Four: "Deceptive Acts and Practices in Violation of the Common Law of the State of New Jersey"

Acella asserts that Exeltis's Count Four is "indecipherable" and the "legal nature of this claim is neither identified nor apparent from the Complaint."  (Def. Mov. Br. at 21).  Indeed,

Acella contends that, "[t]o the extent that this claim is different [from Exeltis's other claims], it is entirely unclear what legal theory is asserted by this vague and ambiguous claim." (*Id.*). Once again, however, Exeltis does not advance any particularized argument in opposition to Acella's claim-specific contention for dismissal.

It is simply unclear to the Court what cause of action Exeltis is trying to assert; its opposition to Acella's motion sheds no light on this issue. The Court therefore dismisses Count Four *without prejudice*. *Cf. RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-0077, 2013 WL 1338309, at *3 (D.N.J. Apr. 1, 2013) ("While, typically, a failure to satisfy Rule 8 occurs where few or only conclusory facts are pled, a complaint like Plaintiff's also fails to satisfy this basic rule. Clearly, Plaintiff's Complaint, standing alone, has failed to put Defendants on notice of the basis of all of the claims against them. . . . [N]either the Court nor Defendants should be required to guess which particular claims are being asserted and/or to sift through a tome of allegations to piece together those claims.").

### D. Count Five: "Misappropriation Under The New Jersey Trade Secret Act, N.J.S.A. 56:15-1, *et seq.*"

Unlike for Counts One through Four, Acella's argument for dismissing Exeltis's claim for misappropriation appears to only implicate the adequacy of pleading Exeltis's alleged "Proprietary Information." To reiterate, Acella argues that "[e]ach claim asserted by Plaintiff is premised upon the allegation that Acella improperly acquired and used something belonging to Plaintiff that was both confidential and proprietary"—but that Exeltis's Complaint "never suggests or identifies even the general nature" of its alleged "Proprietary Information." (Def. Mov. Br. at 6).

In addition to defending the adequacy of allegations regarding "Proprietary Information" in its opposition, (*see* Pl. Opp. Br. at 8-9), Exeltis thereafter supplemented the record by directing

the Court to a recent District of New Jersey decision that it "believe[d] is relevant to the issues discussed in the pending Motion to Dismiss the Complaint [Dkt. No. 12] and Exeltis's opposition thereto." (D.E. No. 25 (citing *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, No. 13-6228, 2016 WL 344888 (D.N.J. Jan. 26, 2016) and stating that the court "addressed a claim for misappropriation of trade secrets in the context of a summary judgment motion")).

As such, however, Exeltis fails to advance any argument in view of the *Baxter Healthcare* decision; it merely cites to it. Exeltis did not request an opportunity to submit a sur-reply in support of its opposition to Acella's motion. And the Court cannot develop Exeltis's argument for it. Moreover, as discussed above, the Court finds that Exeltis seems to acknowledge that it failed to identify in its Complaint what the alleged "Proprietary Information" is—and that it proposes to amend its Complaint to that effect. The Court therefore dismisses Count Five *without prejudice*.

## IV.   Conclusion

For the above reasons, the Court dismisses Exeltis's Complaint *without prejudice*. To the extent there is future Rule 12(b)(6) motion practice, the Court cautions Exeltis that it will be less inclined to permit a curative amendment if Exeltis fails to address all of Acella's dismissal arguments. Indeed, in opposition to any such future motion by Acella, the Court expects that Exeltis will endeavor to articulate how its allegations satisfy each element of each asserted cause of action. An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**